* And the following cases: 79 Civ. 6035 GLG, 79 Civ. 6115 WCC, 79 Civ. 6116 RJW, 79 Civ. 6117 TPG, 79 Civ. 6188 VLB, 79 Civ. 6195 LPG, 79 Civ. 6196 LPG, 79 Civ. 6276 PNL, 79 Civ. 6279 LPG, 79 Civ. 6312 HFW, 79 Civ. 6316 ADS, 79 Civ. 6331 TPG, 79 Civ. 6344 HFW, 79 Civ. 6362 HFW, 79 Civ. 6364 PNL, 79 Civ. 6369 LFM, 79 Civ. 6371 GLG, 79 Civ. 6376 HFW, 79 Civ. 6412 WCC, 79 Civ. 6413 CES, 79 Civ. 6414 CSH, 79 Civ. 6415 RWS, 79 Civ. 6416 CSH, 79 Civ. 6420 WCC, 79 Civ. 6429 CLB, 79 Civ. 6430 RO, 79 Civ. 6434 RJW, 79 Civ. 6440 LBS, 79 Civ. 6461 KTD, 79 Civ. 6467 HFW, 79 Civ. 6468 CBM, 79 Civ. 6470 LWP, 79 Civ. 6475 WK, 79 Civ. 6480 RJW, 79 Civ. 6483 HFW, 79 Civ. 6484 RWS, 79 Civ. 6485 RWS, 79 Civ. 6486 LWP, 79 Civ. 6488 GLG, 79 Civ. 6489 MEL, 79 Civ. 6493 EW, 79

The motions are denied.

SO ORDERED.

## NEW ENGLAND MERCHANTS NATIONAL BANK, Plaintiff,

### v.

## IRAN POWER GENERATION AND TRANSMISSION COMPANY et al., Defendants.

### No. 79 Civ. 6380 (KTD).*

United States District Court,
S. D. New York.

Dec. 22, 1980.

Civ. 6497 RLC, 79 Civ. 6508 LPG, 79 Civ. 6512 LFM, 79 Civ. 6525 LPG, 79 Civ. 6587 TPG, 79 Civ. 6588 VLB, 79 Civ. 6606 WK, 79 Civ. 6620 CBM, 79 Civ. 6644 TPG, 79 Civ. 6693 GLG, 79 Civ. 6696 GLG, 79 Civ. 6709 JMC, 79 Civ. 6714 KTD, 79 Civ. 6748 LWP, 79 Civ. 6749 LWP, 79 Civ. 6810 MEL, 79 Civ. 6831 VLB, 79 Civ. 6835 WCC, 79 Civ. 6840 EW, 79 Civ. 6852 KTD, 79 Civ. 6860 CSH, 79 Civ. 6867 RWS, 79 Civ. 7035 CBM, 80 Civ. 0031 LWP, 80 Civ. 0033 WCC, 80 Civ. 0078 EW, 80 Civ. 0098 GLG, 80 Civ. 0233 LFM, 80 Civ. 0241 RWS, 80 Civ. 0406 RWS, 80 Civ. 0512 ADS, 80 Civ. 0560 WCC, 80 Civ. 0570 CES, 80 Civ. 0615 ADS, 80 Civ. 0791 PNL, 80 Civ. 0838 LWP, 80 Civ. 0933 EW, 80 Civ. 0989 HFW, 80 Civ. 1097 CLB, 80 Civ. 1099 LPG, 80 Civ. 1432 LBS, 80 Civ. 1520 CES, 80 Civ. 1679 VLB, 80 Civ. 1680 VLB, 80 Civ. 1681 VLB, 80 Civ. 1744 HFW, 80 Civ. 1897 RWS, 80 Civ. 1920 ADS, 80 Civ. 1953 LBS, 80 Civ. 1980 EW, 80 Civ. 2360 LWP, 80 Civ. 2570 WCC, 80 Civ. 3933 CBM and 80 Civ. 4932 EW.

**50**

See also, D.C., 495 F.Supp. 73, D.C., 502 F.Supp. 120, D.C., —— F.Supp. ——.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

These cases were referred to me by my learned brethren of this Court for the limited purpose of determining certain common issues of law. Thus, they remain on the dockets of the judges to whom they were originally assigned.

■ I have filed a number of opinions and orders during the past year in an attempt to resolve the common questions of law in these cases. The parties now request that I certify certain of these questions to the Court of Appeals. It is clear to me that some of the matters meet the qualifications for certification under 28 U.S.C.A. § 1292(b). There is substantial room for differences of opinion about certain issues presented in these cases,[1] and immediate appeal of my decisions may materially advance the termination of this litigation. Accordingly, the following questions requested by the various defendants are certified to the Court of Appeals for the Second Circuit:

1. Did Executive Order No. 12,170 (November 14, 1979), 44 Fed.Reg. 67729, the Treasury Regulations promulgated thereunder and President Carter's subsequent reports to Congress suspend, dissolve or terminate the immunity from prejudgment attachment that would otherwise be available to defendants under the Foreign Sovereign Immunities Act of 1976 and the Treaty of Amity?

2. If the answer to No. 1 above is yes, does the International Emergency Economic Powers Act (50 U.S.C. §§ 1701, *et seq.*) authorize the suspension, dissolution or termination of defendants' immunity from pre-judgment attachment in the manner that the Court found had occurred here?

3. If the answers to Nos. 1 and 2 above are yes, is the International Emergency Economic Powers Act constitutional as applied?

Certain plaintiffs also seek certification of other issues discussed in my prior decisions. Only one question presented by them, however, is properly certifiable, to wit:

1. *Compare E-Systems, Inc. v. Islamic Republic of Iran*, 491 F.Supp. 1294 (N.D.Tex.1980) *with New England Merchants National Bank v. Iran Power Generation & Trans. Co.*, 502 F.Supp. 120 (S.D.N.Y.1980).

Whether sovereign immunity of the defendants under the Foreign Sovereign Immunities Act with respect to prejudgment attachment has been waived, terminated or suspended by virtue of (a) the 1955 Treaty of Amity, Economic Relations and Consular Rights between the United States and Iran, or (b) the severance of diplomatic relations between the United States and Iran and actions taken by Iran in violation of international law.

The defendants also request certification of the following question:

Assuming that the attachments are valid, does any order of pre-judgment attachment that may be confirmed in accordance with the Court's Opinion and Order of September 26, 1980 remain in effect only so long as Executive Order No. 12,170 (November 14, 1979), 44 Fed. Reg. 67,729 and the Treasury Regulations promulgated thereunder remain in effect?

This question is not certified. I did not rule in my previous opinions, as the above question suggests, on what may happen in the event the President lifts the freeze presently in effect. Such a contingency is simply not a "case or controversy" properly before any court at the present time. Since the question is not presently a justiciable issue, I will not certify it to the Court of Appeals.

There remains one item which I believe to be properly certifiable, that is, the question of substituted service permitted by my opinion of June 4, 1980 and by my subsequent orders in certain cases.

My decision here may well terminate my association with most of this litigation and it seems appropriate for me to summarize my prior opinions and orders for the benefit of the Court of Appeals.

Prior to November 14, 1979, Iran, its agencies and instrumentalities enjoyed the privilege of sovereign immunity granted by this country to other nations within the meaning of the Foreign Sovereign Immunities Act. The Act provides that the assets of a foreign state, its agencies and instrumentalities are immune from pre-judgment attachment unless the foreign nation explicitly waives such immunity. 28 U.S.C. § 1610(d). The Treaty of Amity between the United States and Iran does not contain such an explicit waiver.

On November 14, 1979, however, Executive Order 12,170 was issued by the President freezing Iranian assets under the control of the United States. In my decision on September 26, 1980, I held that this Executive Order withdrew Iran's foreign sovereign immunity, at least with respect to the frozen assets.

Under the same Executive Order, specific permission by means of a general license was given by the executive department to the plaintiffs herein to bring suit, 44 Fed. Reg. 67,617 (1979), and to seek attachment of the assets, 44 Fed.Reg. 75,353 (1979). The consequent levies made under orders of the Court vested in these plaintiffs certain inchoate rights to the frozen Iranian assets. Although these rights may not now be fixed and certain,[2] they still are rights in property. As a result, the cancellation of these rights by the executive department may only be accomplished by due process of law. It is not necessary for this court at present to delineate the possible methods by which the plaintiffs' rights may be cancelled within constitutional bounds.[3]

In my decision of November 5, 1980, I stated that it was inappropriate for the executive department to ask the court for a

---

2. In order to confirm these attachments, the individual judges to whom these actions have been assigned must determine the validity of the attachments on a case by case basis in accordance with state law. Under New York's attachment statute, plaintiff must prove that (i) the attachment is based on proper grounds, (ii) there is a need for continuing the levy and (iii) there is a probability that plaintiff will succeed on the merits of the underlying claim. N.Y.Civ.

Prac.Law and Rules §§ 6211(b), 6223(b) (McKinney 1980).

3. One court has already observed

". . . the United States always retains the option of spending tax funds in pursuit of its foreign policy objectives . . . ." *National Airmotive, Inc. v. State of Iran, et al.,* 499 F.Supp. 401 (Greene, J.) (D.C.D.C.1980).

stay of these proceedings when it could obtain the same relief by suspending the license it previously granted. Such a suspension, if for a reasonable time, would not necessarily deprive these plaintiffs of their rights in the attached property. In the right circumstances, a suspension could be viewed merely as an appropriate delay to assist in sorting out all the conflicting claims to the assets. This would be no more than the determinate stays already granted by some courts.[4]

█ I turn now to the questions of substituted service. Once these actions were instituted, service on Iran, its agencies and instrumentalities was attempted in accordance with the manner prescribed by statute. That method, involving the return of a receipt for the mail delivery of service, was thwarted apparently because the Iranian postal authorities refused to return the receipts. Given the realities of the modern world and the flexibility of the Rules regarding substituted service, I authorized service by Telex. Use of this method assured that the defendants would receive actual notice of the suits and the claims of the plaintiffs. In certain cases by specific order, I authorized cable delivery of the requisite documents. This was permitted only when there was evidence that actual delivery had been effected.

This Memorandum and Order disposes of the motions for certification of certain questions to the Court of Appeals.

SO ORDERED.

---

4. *See, e. g., National Airmotive, Inc. v. State of Iran,* 499 F.Supp. 401 (Greene, J.) (D.C.D.C. 1980); *In re Related Iranian Cases,* 79 Civ. 3542 (Peckman, Ch. J.) (N.D.Cal. November 13, 1980).